UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| Jorge H. TREVIÑO, M.D. and James STEWART, M.D.<br><br>           Plaintiffs,<br><br>V.<br><br>Ruben PECHERO, M.D, Vicki Lynn CHRYSLER, Alex TREVIÑO and MOBILE VIDEO TAPES, INC.<br>           Defendants. | CIVIL ACTION NO. _____<br><br>Jury Demanded |

PLAINTIFFS' ORIGINAL
COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Jorge H. TREVIÑO, M.D., and James STEWART, M.D. hereinafter referred to as Plaintiffs, complaining of and about Ruben PECHERO, M.D., Vicki Lynn CHRYSLER, Alex TREVIÑO, and MOBILE VIDEO TAPES, INC. (owner of KRGV-TV, NEWS CHANNEL 5), hereinafter called Defendants, and for cause of action show unto this Honorable Court the following:

## I.    INTRODUCTION

1.    Plaintiffs are medical doctors in the City of McAllen, Texas.  Together the Plaintiffs have over 70 years experience practicing family medicine and internal medicine.  Before the illegal acts committed by the Defendants, both Plaintiffs had exemplary reputations in the local and professional community based on their medical and surgical talents, their ubiquitous service to charitable organizations, their flair for life, and their caring hearts.

2.      During their respective professional careers, the Plaintiffs had tremendous success in their field of medicine.  They had a large clientele and felt blessed with the volume of work.  The Defendants' illegal scheme, however, has effectively destroyed Plaintiffs' business and reputation.

3.      The Plaintiffs, Dr. Jorge H. Treviño and Dr. James Stewart bring this action against Ruben Pechero, M.D., Vicki Lynn Chrysler, Alex Treviño, and MOBILE VIDEO TAPES, INC. (owner of News Channel 5) for committing and/or conspiring to commit violations of the Sherman Antitrust Act, Clayton Act, Hobbs Act, Racketeer Influenced and Corrupt Organizations Act, and various other causes of action herein more fully described.

## II.      JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), specifically, 15 U.S.C. § 1-7 (Sherman Antitrust Act), 15 U.S.C § 12-27, 29 U.S.C. § 52-53 (Clayton Act), 18 U.S.C. § 1962 (RICO), and 18 U.S.C. § 1951 (Hobbs Act).

5.      This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

6.      Venue is proper under 28 U.S.C. § 1391(b)(2).

## III.      PARTIES

A.      Plaintiffs

7.      The Plaintiffs in this action are Jorge H. Treviño, M.D. and James Stewart, M.D. Plaintiffs are medical doctors practicing medicine in the City of McAllen, Hidalgo County, Texas.

8.      Plaintiff Jorge H. Treviño, M.D. has practiced medicine for 60 years.  Dr. Treviño has devoted his life to preventing, alleviating, and curing diseases and injuries suffered by his patients.  Dr. Treviño has provided treatment to valley residents for 53 years.  He has also provided for the medical needs of our winter friends.

9.      Plaintiff James Stewart, M.D. has practiced medicine for 20 years.  Dr. Stewart has likewise dedicated his career and applied his talents and skills to heal, treat, and cure all types of illnesses.  Dr. Stewart has diagnosed and treated Rio Grande Valley residents for over 13 years.

B.      Defendants

10.     The Defendants in this action are Ruben Pechero, M.D., Vicki Chrysler, Alex Treviño, and Mobile Video Tapes, Inc.

11.     Defendant Pechero is an orthopedic surgeon with many individual business enterprises and holdings.  He owns, operates, and manages Pechero Limited Partnership, Pechero Building, L.L.C, Pechero Development, Inc., Pechero Family, L.L.C., Pechero Building II, L.L.C, and Pechero Development, L.P.  This Defendant may be served with process at the following address: Rio Grande Valley Orthopedic Center P.A., 1005 East Nolana Loop, McAllen, Texas 78504.

12.     Defendant Chrysler is a realtor.  She owns the real estate firm of Select Properties located at 4500 North 10th Street, Suite 170 in McAllen, Texas.  This Defendant may be served with process at the following address: Select Properties, 4500 North 10th Street, Suite #170, McAllen, Texas 78504.

13.     Defendant Alex Treviño is a reporter for News Channel 5, KRGV-TV, a local ABC affiliate for the Rio Grande Valley in south Texas.  This Defendant may be served with process at the following address: KRGV-TV News Channel 5, 900 East Expressway, Weslaco, Texas 78596.

14.     Defendant Mobile Video Tapes, Inc. is based in Baton Rouge, Louisiana and owns KRGV-TV, News Channel 5.  Defendant Mobile Video Tapes, Inc. is a corporation that has done business in the State of Texas but has not designated or maintained a registered agent for service of process in the State of Texas.  As a result, Plaintiffs request that the Secretary of State be served as

the agent for service of process for Mobile Video Tapes, Inc. pursuant to the terms and provisions of Federal Rules of Civil Procedure.

IV.   <u>LEGAL FRAMEWORK</u>

A.      Racketeer Influenced and Corrupt Organizations Act (RICO)

15.      The Racketeer Influenced and Corrupt Organizations Act (commonly referred to as, and hereinafter referred to "RICO") was enacted in 1970 by the federal government to control organized crime groups.  The Act is found in Title 18, United States Code, and Sections 1961-1968. The RICO statute makes it unlawful to conduct or conspire to conduct an enterprise whose activities affect interstate commerce by committing or conspiring to commit a pattern of racketeering activity.

16.      Section 1964(c) of the RICO Act allows civil claims to be brought by any person injured in their business by reason of a RICO violation.

17.      Defendants herein conspired to conduct an illegal enterprise through a pattern of racketeering, thereby violating or conspiring to violate the RICO statute.

18.      Defendants perpetuated a scheme to steal patients from Plaintiffs.  The Defendants threatened Plaintiffs and interfered with, disrupted, and eventually shut down Plaintiffs' medical office.

19.      As a result of the acts committed by Defendants, Plaintiffs are entitled to three times their actual damages, attorney fees, and costs.

B.       Hobbs Act

20.      The Hobbs Act was passed by the United States Congress to prohibit actual or attempted robbery or extortion affecting interstate commerce.  The Act specifically states:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by ROBBERY or EXTORTION or attempts or conspires so to do, or commits or threatens physical violence to any person or property in

furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

The Act is codified at Title 18, United States Code, Section 1951.

21.     The Defendants herein induced or attempted to induce the Plaintiffs to give up their property and property rights by the wrongful use of threatened force and fear.  Defendants also used or attempted to use the Plaintiffs' reasonable fear of economic harm in order to induce the Plaintiffs to give up their property.

22.     The Defendants' conduct actually and potentially obstructed, delayed, and affected Medicaid and Medicare recipients, payments, and programs (interstate commerce).

23.     Thus, Defendants illegal conduct violates the Hobbs Act.

C.     Sherman Antitrust Act

24.     The Sherman Antitrust Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.  The Act further provides that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . ." 15 U.S.C. § 2.

D.     Clayton Antitrust Act

25.     The Clayton Antitrust Act is codified at 15 U.S.C. §§ 12-27 and 29 U.S.C. §§52-53 and was passed by the U.S. Congress to add further substance to the United States antitrust law by seeking to prevent anticompetitive practices in their incipiency.

26.     The Clayton Act extended the right to sue under the antitrust laws to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15

U.S.C. § 15.  Under the Clayton Act, private parties may sue in U.S. district courts and should they prevail, they may be awarded treble damages and the costs of suit, including attorney's fees.

V.     FACTUAL ALLEGATIONS

27.     Rio Grande Regional Hospital (hereinafter referred to as "Hospital") sub-leased a commercial office to Plaintiffs.  Defendant Pechero owns this property and had previously leased this property to Hospital.  Defendant Pechero did not object to the sub-lease.  The lease between Defendant Pechero and the Hospital eventually expired.

28.     Plaintiffs (having rented the office for several years) invested considerably in the property and wished to continue leasing.  Plaintiffs negotiated directly with Defendant Pechero and an agreement was reached.

29.     After the agreement, Defendant Pechero started to demand that Plaintiff Treviño refer all his orthopedic patients to Defendant Pechero for treatment.

30.     Soon, Defendant Pechero was looking for Plaintiff Stewart to organize a major Medicare contract with Doctors Hospital at Renaissance.

31.     Defendant Pechero, a large shareholder of Doctors Hospital at Renaissance, was optimistic that Dr. Stewart could convince a Medicare Advantage Plan provider, Texas Healthspring, to contract with Doctors Hospital at Renaissance.  Thereby increasing his wealth and influence.

32.     Plaintiff Dr. Stewart was serving on the Physician Advisory Committee of Texas Healthspring.  The Physician Advisory Committee did not want to contract with the Hospital at Renaissance, however, because of a history of over-utilization and unnecessary procedures performed at the facility.

33.     Because Plaintiffs stopped referring patients to Defendant Pechero and because his Hospital at Renaissance was not awarded a contract with Texas Healthspring, Defendant Pechero

began a continuous stream of acts, some legal and some illegal, to extort patients away from Plaintiffs.

34.     In early 2007, Defendant Chrysler approached Plaintiffs and instructed Plaintiffs that Defendant Pechero demanded to employ his construction company, Pechero Building II, L.L.P., to remodel the leased property.

35.     Plaintiffs, feeling that there was no other option, agreed with the proposal.

36.     Subsequently, Defendant Chrysler revealed to Plaintiffs that the cost of all the remodeling would have to be paid by Plaintiffs.  Additionally, Defendant Chrysler demanded almost double the rent.

37.     Plaintiffs rejected this proposal and hoped to negotiate the terms of the proposed remodeling with Defendant Chrysler and Defendant Pechero.

38.     On October 25, 2007, Defendant Chrysler forcefully removed Plaintiffs' employees from the property, illegally locked the property, and unlawfully prohibited Plaintiffs from re-entering the property.

39.     Plaintiffs pleaded with Defendant Chrysler and requested re-entry onto the property to obtain their equipment and to dispose of any biohazard material that might have been maintained by their technicians.  Neither defendant Chrysler nor Defendant Pechero allowed the Plaintiffs re-entry.

40.     After October 27, 2007, Plaintiffs again repeatedly requested access to their premises. Such requests fell on deaf ears, however.

41.     The Plaintiffs were not allowed to go back into their offices.  Defendant Chrysler and the Defendant Pechero refused to permit the Plaintiffs into the property.

42.     Curiously, Defendant Chrysler invited News Channel 5 onto the property.   On December 3, 2007, Alex Treviño, a reporter for KRGV-TV, News Channel 5, and a News Channel 5 film crew trespassed on the property.  News Channel 5, through Alex Treviño, published a broadcast that accused Plaintiffs of illegal medical practices and held Plaintiffs to public contempt and ridicule.

43.     The news story depicted an "abandoned" medical office with patient files opened to expose confidential information.

44.     As a direct result of Defendants' scheme, Plaintiffs are being investigated by the Texas Medical Board for HIPAA violations and for illegal dissemination of confidential information. Plaintiffs' patients are even threatening to sue Plaintiffs.  Plaintiffs' reputation is ruined; Plaintiffs' business is ruined.

VI.     <u>FIRST CAUSE OF ACTION - RICO VIOLATIONS</u>

45.     Pleading further and without waiving the foregoing and based upon the allegations set forth in Paragraph V above, Plaintiffs brings an action against Defendant Pechero, Defendant Chrysler, and Defendant Treviño for violating the RICO Act and/or conspiring to violate RICO, specifically Sections (b) and (c).  Plaintiffs will show that Defendants associated together to commit or conspired to commit a pattern of predicate acts, namely extortion, in the course of their individual employments.  Said Defendants engaged in a pattern of racketeering activity that affected interstate commerce.

46.     The named Defendants concocted a scheme to extort, defraud, and injure Plaintiff's reputation.  Defendant Pechero's plot was to extort Plaintiffs customers and patients if he did not get his way.  He induced fear in the Plaintiffs by consistently interfering with and disrupting Plaintiffs' practice.

47.    Defendant Pechero demanded all of Plaintiffs' patients that were orthopedic and a contract with Texas Healthspring and Doctors Hospital at Renaissance or he would literally close down Plaintiffs' business and deprive them of an office to stay in business.  Pechero used the threat of closing Plaintiffs' clinic.  These acts constitute extortion.

48.    Defendant Pechero engaged in a pattern of racketeering activity through an association-in-fact enterprise consisting of Defendant Chrysler, the realtor, and Defendant Treviño, the reporter.  This systematic victimization would have continued indefinitely.

49.    Plaintiffs have been injured in their business, reputation, and property by reason of the pattern of racketeering activity of Defendants.  Pursuant to Section 1964(c) of the RICO statute, Plaintiffs are entitled to treble damages, attorney's fees, and costs.

VII.    SECOND CAUSE OF ACTION – VIOLATIONS OF HOBBS ACT

50.    Pleading further and without waiving the foregoing, Plaintiffs reassert the allegations set forth in Paragraph V above as if they were fully set forth herein verbatim.  Plaintiffs bring this cause of action against Defendant Pechero and Defendant Chrysler for violations or attempted violations of provisions of the Hobbs Act.

51.    Plaintiffs will show that if the allegations about these Defendants are correct, Defendant Pechero and/or Defendant Chrysler obstructed, delayed, or affected commerce or the movements of any article or commodity in commerce by wrongful use of threatened force and fear.

52.    Plaintiffs will further show that said Defendants induced and/or attempted to induce Plaintiffs to give up their property and property rights by instilling or attempting to instill fear of economic harm.  Property has been defined as "any valuable right considered as a source of wealth." United States v. Tropiano, 418 F.2d 1069, 1075 (2d Cir. 1969).  "Property" includes the right to

contract freely, make business decisions, and to solicit business free from wrongful coercion. <u>United States v. Zemek</u>, 634 F.3d 1159, 1174 (9th Cir. 1980).

53.     Plaintiffs will also show that Defendants conduct actually and/or potentially obstructed, delayed, or affected interstate commerce.  Plaintiffs have a large clientele under the Federal Medicaid and Medicare Program.  The patients' information was effectively "kidnapped" and held hostage. The patients' files were sequestered and Defendants did not permit Plaintiffs to access the medical records, charts, and files.

VIII.   <u>THIRD CAUSE OF ACTION – FRAUD</u>

54.     Pleading further and without waiving the foregoing and based upon the allegations set forth in Paragraph V above, Plaintiffs brings an action against Defendant Pechero for fraud. Defendant Pechero, made false material representations to Plaintiffs with the intent that Plaintiffs rely upon the representations.

55.     Defendant Pechero knew the representations were false or made the representations recklessly, as positive assertions, without knowledge of the truth of the statements.  Plaintiffs relied upon the representations, which caused Plaintiff's injury.  Plaintiffs suffered damages for which Plaintiffs herein sue.

IX.   <u>FOURTH CAUSE OF ACTION – INVASION OF PRIVACY</u>

56.     Pleading further and without waiving the foregoing and based upon the allegations set forth in Paragraph V above, Plaintiffs brings an action against Defendant Pechero, Defendant Chrysler, Defendant Treviño, and Defendant Mobile for invasion of privacy.

57      Defendants publicized facts regarding Plaintiffs' private lives, which were not of legitimate public concern.  The publicity was highly offensive to Plaintiffs and would be highly offensive to a reasonable person.  Plaintiffs were injured as a result of the conduct of Defendants. Plaintiffs suffered damages for which Plaintiffs herein sue.

## X.      FIFTH CAUSE OF ACTION – BREACH OF CONTRACT

58.      Pleading further and without waiving the foregoing, Plaintiffs reassert the allegations set forth in Paragraph V above as if they were fully set forth herein verbatim. Plaintiffs bring an action for breach of contract against Defendant Pechero.

59.      Plaintiffs and Defendant Pechero entered into a lease agreement.  Said agreement is a valid, enforceable contract.  Plaintiffs were in direct privity with the Defendant.  The Plaintiffs fully performed and tendered performance in accordance with the lease agreement and its contractual obligations.

60.      The Defendant Pechero, however, failed, without legal excuse, to perform the terms of the agreement.  Defendant was not excused from performance.  Defendant, therefore, materially breached the contract.  Said breach directly caused Plaintiff's injury.

## XI.     SIXTH CAUSE OF ACTION – TORTIOUS INTERFERNCE WITH CONTRACT

61.      Pleading further and without waiving the foregoing and based upon the allegations set forth in Paragraph V above, Plaintiffs brings an action against Defendant Pechero for tortuous interference with contract.

62.     Plaintiffs will establish they were parties to a valid contract with Defendant Pechero. Defendant Pechero willfully and intentionally interfered with the contract.

63.     Said interference was a proximate cause of Plaintiff's injury.  Your Plaintiffs have incurred substantial actual damages and loss as a result of Defendant's conscious, willful, intentional, and malicious interference.

XII.     SEVENTH CAUSE OF ACTION – TORTIOUS INTERFENCE
WITH PROSPECTIVE BUSINESS RELATIONS

64.     Pleading further and without waiving the foregoing, Plaintiffs reassert the allegations set forth in Paragraph V above as if they were fully set forth herein verbatim. Plaintiffs bring an action for tortuous interference with prospective business relations against Defendant Pechero.

65.     As a result of Defendant's conduct, Defendant interfered with the prospective business relations of Plaintiffs.  There was a reasonable probability that the Plaintiffs would have entered into business relationships with third persons.

66.     Plaintiffs would establish they had business relationships with third parties that had not yet been reduced to a contract.  Plaintiffs would further establish they had continuing business relations that were not yet formalized by a written contract.

67.     The Defendant's conduct was independently tortious and/or unlawful.   The interference on behalf of the Defendant was the proximate cause of the Plaintiffs' injury. The Plaintiffs suffered actual damages and loss.

XIII.     EIGHT CAUSE OF ACTION – INTENTIONAL INFLICTION
OF EMOTIONAL DISTRESS

68.     Pleading further and without waiving the foregoing and based upon the allegations set forth in Paragraph V above, Plaintiffs brings an action against Defendant Pechero, Defendant Chrysler, Defendant Treviño, and Defendant Mobile for intentional infliction of emotional distress.

69.    The Defendants' conduct was extreme and outrageous and their actions were intentional or reckless.  Said conduct proximately caused the Plaintiffs severe emotional distress for which they now bring suit.

XIV.    NINTH CAUSE OF ACTION - DEFAMATION

70.    Pleading further and without waiving the foregoing and based upon the allegations set forth in Paragraph V above, Plaintiffs bring an action against Defendant Pechero, Defendant Chrysler, Defendant Treviño, and Defendant Mobile for defamation.

71.    Defendants, Pechero, Chrysler, Treviño, and Mobile injured Plaintiffs' reputation by making false, disparaging statements toward Plaintiffs.  Defendants intentionally published an oral statement about Plaintiffs that is deemed to be false.

72.    Moreover, the false statements that were referred to the Plaintiffs have resulted in defamatory actions against the Plaintiffs.

73.    With regard to the truth of the statement, Defendants Pechero, Chrysler, Treviño, and Mobile injured Plaintiffs' reputations by acting with actual malice toward Plaintiffs.

74.    Plaintiffs would show that Defendants proved to be negligent by their actions and are held liable without regard to fault (strict liability).

75.    As a result of Defendants' negligent conduct of making false, defamatory statements, Plaintiffs have suffered pecuniary injuries for which now they bring suit.

XV.    TRESSPASS TO REAL PROPERTY

76.    Pleading further and without waiving the foregoing and based upon the allegations set forth in Paragraph V above, Plaintiffs brings an action against Defendant Pechero, Defendant Chrysler, Defendant Treviño, and Defendant Mobile for trespass.

77.     The Plaintiffs were tenants and as such had a lawful right to possess the property.  A party with a lawful right to possession can maintain an action for trespass even if the party does not own the property.  Accordingly, lessees have standing to sue for trespass. <u>Garey Construction Co. vs. Thompson</u>, 697 S.W.2d 865, 867 (Tex.App.-Austin 1985, no writ).

78.     The Defendants physically, intentionally, and voluntarily entered Plaintiffs' property without the consent of Plaintiffs.  The Defendants' trespass caused injury to the Plaintiffs' right of possession.

79.     Defendant Chrysler, Treviño, and Mobile actually entered the Plaintiffs' land. Defendant Chrysler caused Treviño and Mobile to enter Plaintiffs' land by allowing them into the property to film.

80.     Defendant Pechero aided, assisted, advised, and/or encouraged the actual trespassing by Chrysler, Treviño, and Mobile.  Additionally, Pechero ratified and adopted the acts of these trespassers for his own benefit.

81.     Texas law provides that if a party commands, requests, or otherwise intentionally causes someone to enter the land of another, or if a person aides, advises, or encourages the commission of the trespass, the party or person is held liable for the trespass along with the trespassers. <u>Crow v. TRW, Inc.</u>, 893 S.W.2d 72, 78-79 (Tex.App.-Corpus Christi 1994, no writ) and <u>First Am. Title Ins. Co. v. Willard</u>, 949 S.W.2d 342, 350-351 (Tex.App.-Tyler 1997, writ denied).

82.     Thus, Defendant Pechero should be held liable for the acts, commissions, and damages of Chrysler, Trevino, and Mobile.  Similarly, Defendant Chrysler should be liable for the conduct of the trespassing Trevino and Mobile.  Trevino and Mobile should be liable in their own right for the illegal trespass.

XVI.   <u>TRESPASS TO PERSONALTY</u>

83.     Pleading further and without waiving the foregoing, Plaintiffs reassert the allegations set forth in Paragraph V above as if they were fully set forth herein verbatim. Plaintiffs bring an action for trespass to personalty against Defendant Pechero, Chrysler, Treviño, and Mobile.

84.     As mentioned earlier, Plaintiffs were tenants and had a lawful right to posses the property.  Defendants entered the Plaintiffs' land and the entry was physical, intentional, and voluntary.  Furthermore, said entry unlawfully injured and interfered with the possession of Plaintiffs' personal property.

85.     As a direct result of Defendants' illegal entry, Plaintiffs were deprived of the use of various equipment, tools, files, and office space.  Defendants' intentional conduct has caused Plaintiffs injuries for which now they bring suit.

## XVII.  <u>VIOLATIONS OF PROPERTY CODE</u>

86.     Pleading further and without waiving the foregoing and based upon the allegations set forth in Paragraph V above, Plaintiffs brings an action against Defendant Pechero and Defendant Chrysler for violations of the Texas Property Code Chapters 24 and 93.

87.     Plaintiffs were commercial tenants; Defendant Pechero was the landlord; Defendant Chrysler was Pechero's agent.

88.     Defendant Pechero and Chrysler intentionally violated provisions of the Texas Property Code when they unlawfully locked out the Plaintiffs, removed Plaintiffs' property, and prevented Plaintiffs from re-entering the property.

89.     Section 93.002(b) of the Texas Property Code states:

> A landlord may not remove a door, window, or attic hatchway cover or a lock, latch, hinge, hinge pin, doorknob, or other mechanism connected to a door, window, or attic hatchway cover from premises leased to a tenant or remove furniture, fixtures, or appliances furnished by the landlord from premises leased to a tenant unless the landlord removes the item for a bona fide repair or replacement. . . .

Defendant Pechero and Defendant Chrysler violated this section by removing the door locks and other mechanisms connected to the doors.

90.     It is anticipated that Defendant Pechero and Defendant Chrysler may argue that Plaintiffs had not paid rent.  Section 93.002(c)(3) allows a landlord to change the door locks of a tenant who is delinquent in paying rent.  However, if that landlord or the landlord's agent changes the door lock, the landlord or the agent *must* place a written notice on the tenant's front door stating the name and the address or telephone number of the individual from which the new key may be obtained. Texas Property Code, §93.002(f).  Additionally, before a landlord or his agent can lock out a tenant, the landlord must follow the strict requirements of the Property Code.  The landlord must demand for possession in writing, mail a notice to vacate, or a notice of tenancy termination in accordance with Sections 24.005 or Sections 91.001 of the Texas Property Code.

91.     The Plaintiffs were not in default.  Hence, Defendant Pechero and Defendant Chrysler had no authority to lock out Plaintiffs from their business, remove their property, prevent the use of said property, and thwart re-entry.  The illegal lock out resulted in damages to Plaintiffs for which they now seek remedy.

92.     Arguing in the alternative, even if the Plaintiffs would have been in default, Defendant Pechero and/or Defendant Chrysler failed to follow the requirements and procedures as outlined in the Texas Property Code.  Such wanton disregard damaged Plaintiffs.  Plaintiffs herein demand redress.

## XVIII. EXEMPLARY DAMAGES

93.     Pleading further and without waiving the foregoing, Plaintiffs reassert the allegations set forth in Paragraph V above as if they were fully set forth herein verbatim. Plaintiffs are

respectfully requesting this Honorable Court to award exemplary damages against Defendant Pechero, Chrysler, Treviño, and Mobile.

94.     Plaintiffs would further show that the acts and omissions of Defendants complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiffs.

95.     In order to punish said Defendants for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiffs seek recovery from Defendants for exemplary damages.

## XIX.   SPECIFIC RELIEF

A.     Dr. Jorge H. Treviño

96.     As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff, Jorge H. Treviño, M.D., was caused to suffer damages and injury, and to incur the following damages:

a.   Economic damages;

b.   Injury to personal reputation;

c.   Inconvenience;

d.   Nominal damages;

e.   Lost profits;

f.   Damage to business reputation;

g.   Loss of goodwill;

h.   Contractual Expectancy – cost of delay in performance;

i.   Cost of substitution;

j.   Personal Property Damages

        a.      Destruction of property - cost of repair
        b.      Destruction of property - loss of use
        c.      Loss of market value
        d.      Replacement value

k.  Real Property Damages
        a.      Actual value of improvements
        b.      Loss of office use
        c.      Enhanced value

l.  Mental anguish in the past;

m.  Mental anguish in the future;

n.  Loss of past earning capacity;

o.  Loss of future earning capacity; and

p.  Out-of-pocket damages.

B.     Dr. James Stewart

97.     As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff, James Stewart, M.D., was caused to suffer damages and injury, and to incur the following damages:

A.     Economic damages;

B.     Injury to personal reputation;

C.     Inconvenience;

D.     Nominal damages;

E.     Lost profits;

F.     Damage to business reputation;

G.     Loss of goodwill;

H.     Contractual Expectancy – cost of delay in performance;

I.     Cost of substitution;

J.    Personal Property Damages
      a.    Destruction of property - cost of repair
      b.    Destruction of property - loss of use
      c.    Loss of market value
      d.    Replacement value

K.    Real Property Damages
      a.  Actual value of improvements
      b.  Loss of office use
      c.  Enhanced value

L.    Mental anguish in the past;

M.    Mental anguish in the future;

N.    Loss of past earning capacity;

O.    Loss of future earning capacity; and

P.    Out-of-pocket damages.

## XX.    TREBLE DAMAGES

98.    Plaintiffs herein respectfully request this Honorable Court, pursuant to the RICO Act and the Hobbs Act to award Plaintiffs treble damages.

## XXI.    CLAIM FOR ATTORNEY'S FEES

99.    In order to prosecute these actions against all the Defendants, Plaintiffs have been required to retain the services of the undersigned attorneys and will incur the fees and expenses of said attorneys in regard to this action.

100.    Accordingly, pursuant to the RICO statue, Hobbs Act, and Chapters 37 and 38 of the Texas Civil Practice and Remedies Code, Plaintiffs are entitled to recover its reasonable and necessary attorney's fees incurred through trial and any appeal.

## XXII.  PRAYER

101.    **WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, Jorge H. Treviño, M.D. and James Stewart, M.D., respectfully pray that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against Defendants, jointly and severally, for damages in an amount within the jurisdictional limits of the Court; exemplary damages, treble damages, attorney's fees, costs of court, as addressed to each Defendant, together with interest as allowed by law; and such other and further relief to which the Plaintiffs may be entitled at law or in equity.

Respectfully submitted,

By:    /s/ Orlando Jimenez
       Orlando Jimenez
       Attorney In Charge
       State Bar No. 24044784
       Federal I.D. No. 625514

       HILL & JIMENEZ, P.C.
       Attorneys and Counselors
       211 W Park Avenue
       Pharr, Texas 78577
       Telephone:    956-702-3355
       Facsimile:    956-702-3399

       Counsel for Plaintiffs

**PLAINTIFFS HEREBY DEMAND TRIAL BY JURY**